IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY<br>Plaintiff<br><br>v.<br><br>READING BLUE MOUNTAIN & NORTHERN<br>RAILROAD COMPANY<br>Defendant | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 3: 03 CV 0736<br><br>(Judge Munley) |

**MOTION OF READING BLUE MOUNTAIN & NORTHERN RAILROAD COMPANY
TO DISQUALIFY JANSSEN & KEENAN, P.C. AS COUNSEL
FOR NORFOLK SOUTHERN RAILWAY COMPANY**

Defendant Reading Blue Mountain & Northern Railroad Company ("Reading Blue Mountain") hereby moves this Court for an order disqualifying Janssen & Keenan, P.C. as counsel for Norfolk Southern Railway Company ("Norfolk Southern"), and in support thereof avers as follows:

1. On April 30, 2003, Norfolk Southern filed its Complaint against Reading Blue Mountain alleging therein that Reading Blue Mountain had breached a contract ("the Agreement") related to a common communication and signal system.

2. Since the inception of the case, Norfolk Southern has been represented by Janssen & Keenan, P.C. ("J&K"), and Reading Blue Mountain has been represented by Gollatz, Griffin & Ewing, P.C. ("GGE"). One of the principal

attorneys at GGE working on Reading Blue Mountain's defense was Charles L. Howard.

3. Mr. Howard interviewed Reading Blue Mountain personnel, and was involved in all aspects of the defense of Reading Blue Mountain, including discovery, and he took or defended all of the depositions that were conducted.

4. Mr. Howard discussed a variety of strategy and legal issues with the President of Reading Blue Mountain, relating to this case, as well as other matters involving or potentially involving Reading Blue Mountain and Norfolk Southern.

5. In December 2004, the Court granted Reading Blue Mountain's Motion for Partial Summary Judgement. Mr. Howard made the successful oral argument to the Court on behalf of Reading Blue Mountain.

6. Norfolk Southern filed for reconsideration of the Court's Order. Mr. Howard was the principal drafter of Reading Blue Mountain's response.

7. Sometime prior to May 26, 2005 (the exact time is unknown to Reading Blue Mountain), with the motion for reconsideration still pending, J&K advised Mr. Howard that it had an opening for a transportation litigator. J&K and Mr. Howard engaged in negotiations about J&K's possible hiring of Mr. Howard. On May 26, 2005, Mr. Howard first informed GGE that he had been negotiating with, and had accepted an offer of employment from, J&K. J&K wanted Mr. Howard to start work with them on June 6, 2005.

8. On June 3, 2005, Paul Keenan of J&K and Eric Hocky of GGE spoke about screening that J&K proposed to establish. Mr. Keenan sent Mr. Hocky a letter on that date outlining the proposed screening. A copy of the June 3, 2005 letter is

attached hereto as Exhibit A.

9. Mr. Howard began work at J&K on June 6, 2005.

10. Reading Blue Mountain and GGE do not know what actual steps were at that time, or have since been, taken by J&K to implement the proposed screening. Whatever screening was implemented was put in place just before Mr. Howard left GGE and started work at J&K, and well after J&K and Mr. Howard engaged in their negotiations.

11. According to its web site, J&K is a firm with nine lawyers (including Mr. Howard) with a single office in Philadelphia; including Mr. Howard, five of the lawyers are involved in transportation related litigation such as is involved in this case.

12. Because of J&K's improper actions in negotiating with and hiring Mr. Howard while he was counsel to an opponent of a firm client, J&K should be disqualified from continuing to represent Norfolk Southern in this case.

13. J&K's proposed screening, even if properly implemented, is not adequate in the circumstances of this case.

14. Reading Blue Mountain objected to the move of Mr. Howard to J&K, and asked GGE to research the propriety of J&K continuing to represent Norfolk Southern in this proceeding. Because of the personal relationships between the lawyers of GGE and Mr. Howard, Reading Blue Mountain also asked an independent counsel to review the matter.

15. Reading Blue Mountain has been harmed, not only by having to replace the lawyer on its defense team that had spent the most time on this case, but by having to bring this motion.

16. Consistent with Local Rule 7.1, the undersigned counsel requested that Janssen & Keenan, P.C. voluntarily withdraw as counsel for Norfolk Southern. Janssen & Keenan, P.C. did not agree to do so.

WHEREFORE, Reading Blue Mountain respectfully requests that the Court disqualify Janssen & Keenan, P.C. from representing Norfolk Southern in this case, and award Reading Blue Mountain such other relief as is just and reasonable, including its costs and attorneys' fees in bringing this motion and reviewing the related issues.

Respectfully submitted,

GOLLATZ, GRIFFIN & EWING, P.C.

Dated: August 12, 2005        By: _____
                                  Eric M. Hocky, Esquire
                                  PA Attorney I.D. No. 34560
                                  Amy Donohue-Babiak, Esquire
                                  PA Attorney I.D. No. 46892
                                  Four Penn Center, Suite 200
                                  1600 John F. Kennedy Blvd.
                                  Philadelphia, PA 19103
                                  (215) 563-9400

                                  Attorneys for Defendant
                                  Reading Blue Mountain & Northern
                                  Railroad Company