IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY:<br>Three Commercial Place<br>Norfolk, Virginia 23510-9242 : <br> : <br> Plaintiff, : <br> : <br>v. : <br> : <br>READING BLUE MOUNTAIN & NORTHERN :<br>RAILROAD COMPANY :<br>1 Railroad Boulevard :<br>Port Clinton, Pennsylvania 19549 :<br> : <br> Defendant. : | Civil Action No.<br>3:CV 03 0736<br><br>(Judge Munley)<br><br><br><br>**Electronically Filed** |

## PLAINTIFF NORFOLK SOUTHERN RAILWAY COMPANY'S RESPONSE TO THE DEFENDANT'S MOTION TO DISQUALIFY JANSSEN & KEENAN P.C. AS COUNSEL FOR NORFOLK SOUTHERN RAILWAY CO.

Plaintiff, Norfolk Southern Railway Company ("NS") through its counsel Janssen & Keenan P.C. ("J&K") do hereby oppose and respond to the Motion of the Reading Blue Mountain and Northern Railway Company ("RBMN") to disqualify its counsel.

## I.  Status of the Case

NS filed this lawsuit seeking to recover monetary damages arising from the breach of an agreement for the maintenance of a communication and signal system. In 2004, the Court entered summary judgment for the defendant RBMN, declaring that the parties' duties under the Agreement were discharged. In December 2004 plaintiff, NS, filed a Motion for Reconsideration, which remains pending. The case has had no activity whatsoever since the filing of the Motion for Reconsideration.

## II. Operative Facts Regarding the Employment of Mr. Howard

On May 19, 2005 Charles Howard, Esquire, an attorney employed by the law firm of Gollatz, Griffin, and Ewing ("GGE"), learned in a telephone conversation with attorney Jeffrey Cohen that the J&K law firm was looking to hire an additional attorney with experience in transportation litigation. (See Affidavit of Jeffrey Cohen, Exhibit "A", and Affidavit of Charles Howard, Exhibit "B"). Mr. Howard indicated that he was interested in such a position, and he was directed to contact attorney Paul D. Keenan for additional information.[1]

Mr. Howard thereafter contacted Mr. Keenan, and as a result, on May 25, 2005, an offer of employment was made to Mr. Howard subject to and conditioned

---

[1] Mr. Howard had, unbeknownst to J&K or his then employer, already explored another possible attorney position before speaking with J&K. See Howard Affidavit, appended hereto as Exhibit "B".

2

upon the approval of the Reading Blue Mountain and Northern Railway Company. (See Affidavit of Howard, Exhibit "B", and Affidavit of Paul Keenan, Exhibit "C"). On May 26, 2005 Mr. Howard spoke with Mr. Hocky, the lead partner of GG&E who was responsible for representation of RBMN, and informed him of the pending and conditional offer of employment by J&K to start June 6, 2005. That same day Mr. Hocky told Mr. Howard he would ask his client if there was any objection to Mr. Howard's employment by J&K. (See Affidavit of Charles Howard, Exhibit "B").

On June 3, 2005, Mr. Keenan also spoke with Mr. Hocky by telephone, confirming that a conditional offer of employment had been made to Mr. Howard to start June 6, 2005, and asking whether RBMN had any objection to Mr. Howard's employment. Mr. Hocky also assured Mr. Keenan that he would ask his client if there was any objection to Mr. Howard's prospective employment with J&K. (See Affidavit of Paul Keenan, Exhibit "C").

That same day, Mr. Keenan also sent to Mr. Hocky a written description of the screening process to be put into place before Mr. Howard's prospective employment. The letter to Mr. Hocky clearly states: "Please let me know if there are any objections." (See Exhibit "D").

Mr. Hocky was well aware of the fact that Mr. Howard was scheduled to begin his new employment by June 6, 2005. At no time did Mr. Hocky express

any objection or reservation with respect to Mr. Howard's employment by J&K as of June 6, 2005. Mr. Howard commenced his employment with J&K on June 6, 2005. For the entire remainder of the month of June, Mr. Hocky expressed no objection or reservation as to Mr. Howard's employment.

Sheepishly omitted in the Defendant's Motion is the fact that Mr. Hocky never expressed any objection to Mr. Howard's employment until a letter was faxed to J&K on July 7, 2005, which was a full six weeks after Mr. Hocky was first asked if RBMN had any objections to Mr. Howard's employment. This material omission from RBMN's motion is a critical fact for which RBMN has never provided any explanation.

### III. J&K Has Satisfied its Burden Under the Pennsylvania Rules

In its Motion for Disqualification of counsel, defendant's argument focuses upon two issues: (1) a claim that Mr. Howard was actively working on this case while discussing prospective employment with J&K; and (2) that because of the firm's size (10 attorneys), no screening mechanism is sufficient. Both arguments purposefully ignore or overlook critical and meaningful facts, and both arguments are without merit.

With respect to Mr. Howard's brief discussion with Mr. Keenan, such discussions took place at a time when the underlying case had been inactive for

months, as there was nothing to be done on the matter. The case did not then, and does not now, have any active Scheduling Order.

What's more, the defendant's own brief quotes from the Restatement 3d, The Law Governing Lawyers, § 125, comment d, as follows: "If discussion of employment has become concrete and the interest in such employment is mutual, the lawyer must promptly inform the client." This is precisely what Mr. Howard did. When the discussion of his employment had become concrete, he notified Mr. Hocky on May 26, 2005, and asked if RBMN would have any objection. Defendant's motion also argues that if Mr. Howard had notified RBMN of his discussions earlier, it could have "protected its interests" and would not have consented. Given the fact that the case was inactive, and for reasons never explained it took the RBMN six weeks to respond with any objection, the argument that it would have responded in late May is hollow and completely lacks merit.

J&K is well aware that under Rule 1.10(b) of the Rules of Professional Conduct, it has the burden to prove that Mr. Howard is adequately screened, is apportioned no fees from this matter, and that written notice was promptly given to RBMN. As clearly established by the exhibits to this response, this burden of proof has been satisfied. Screening efforts were not only established in advance,

5

the impacted party was provided a copy of the screening measures in advance, and asked to provide any objections.

In <u>Dworkin v. General Motors Corporation</u>, 906 F.Supp. 273, (E.D. Pa. 1995) the U.S. District Court was presented with a case involving more complex facts that were more favorable to disqualification of a small size law firm. Despite the facts, the Court denied the motion for disqualification because the respondents satisfied their burden. The Court specifically held with respect to screening and notice:

> This court finds this written notice to be prompt, given that London had received the offer from K & S on May 31, 1995, and did not accept the offer until June 2, 1995, the day he sent the letter to Adams. This letter was certainly sufficient notice to "enable GM to ascertain compliance with Rule 1.10," because based on this notice, GM would be able to make an informed inquiry as to whether the screen and fee apportionment system were adequate.

<u>Dworkin</u>, at 283.

In the instant case, not only was notice prompt, but the impacted client was provided a written description of the screening and asked for objections. (In <u>Dworkin</u>, GM notified counsel of their objections with a few days of receiving notice, unlike the six weeks that expired in this case).

It is significant that RBMN's motion does not contest any specific components of the screening process described in Keenan's letter of June 3, 2005.

6

Instead, RBMN repeatedly argues only that the size of J&K precludes the adequacy of any screening. Such an argument is impractical, inferring that there should be different sets of rules depending upon the law firm size. The Pennsylvania Rules of Professional Conduct apply to firms of all sizes, requiring proof of adequate screening. J&K provided advance notice of, and implemented, a screening process that is not only adequate, it is also unquestioned by RBMN.

### IV. For the Court to Allow Disqualification After a Period of Six Weeks During Which RBMN Made no Objection Would Result in Endless Uncertainty for Any Attorney Obtaining Employment With a New Law Firm.

Rule 1.10 (b) requires that written notice be "<u>promptly</u>" given to the appropriate client when a lawyer becomes associated with a firm representing parties of adverse interest. Such promptness is unquestionably required so as to avoid uncertainty for all concerned. No reported decision could be found where a party waited six weeks after receiving notice, before serving any objection.

Given the substantial lapse of time in this case, and the fact that RBMN – after receiving advance notice and inquiry – waited until after Mr. Howard had been employed with his new firm for well over a month before objecting, there is a strong basis for concluding that RBMN is estopped from asserting its late and untimely objection. RBMN has been asked, but has failed to ever offer any explanation or excuse for waiting six weeks to respond. Accordingly, it is equitable to conclude that RBMN has itself waived its right to seek

7

disqualification, given its unexplained failure to object over such an extensive period of time.

## V. Conclusion

In light of the fact that Mr. Howard's employment arose at a time when this case had been inactive for months, and in light of the fact that the movant was provided a written and adequate screening procedure before Mr. Howard's employment was initiated, J&K has satisfied the requirements set forth in the Pennsylvania Rule 1.10(b). The movant's only basis for challenging the screening process, firm size, is not adequate by itself to justify disqualification. What's more, movant's failure to notify any party of any objection to Mr. Howard's employment for six weeks after receiving notice, is itself a sufficient ground for concluding that any objection has been waived.

Respectfully submitted,

**JANSSEN & KEENAN P.C.**

BY: /s/ Jeffrey D. Cohen
Jeffrey D. Cohen
I.D. No. PA 77798
One Commerce Square, Suite 2050
2005 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-8888
Facsimile: (215) 665-8887
E-mail: jcohen@janssenkeenan.com

Attorneys for Plaintiff
Norfolk Southern Railway Company

Dated: August 24, 2005