IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY | : | No. 3: 03 cv 0736 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| READING BLUE MOUNTAIN & NORTHERN | : | |
| RAILROAD COMPANY | : | |
| Defendant | : | |

**REPLY OF
READING BLUE MOUNTAIN & NORTHERN RAILROAD COMPANY
TO RESPONSE OF
NORFOLK SOUTHERN RAILWAY COMPANY**

Defendant Reading Blue Mountain & Northern Railroad Company ("Reading Blue Mountain") hereby replies to the Response of Norfolk Southern Railway Company ("Norfolk Southern") opposing Reading Blue Mountain's motion to disqualify Janssen & Keenan, P.C. ("J&K") from continuing to represent Norfolk Southern in this proceeding.

Norfolk Southern's main argument appears to be that its offer of employment to Mr. Howard was conditioned on the consent of Reading Blue Mountain (presumably to J&K's continued representation of Norfolk Southern in this proceeding), and that Reading Blue Mountain's failure to object for a period of time constituted a waiver of its right to do so.

As an initial matter, neither Mr. Howard nor Mr. Keenan ever advised Gollatz, Griffin &

Ewing, P.C. ("GGE") that the offer of employment to Mr. Howard was conditioned upon any consent from Reading Blue Mountain.[1] Rather, the first notice of the employment offer that GGE had was on May 25, 2005 when Mr. Howard advised Eric Hocky that Mr. Howard had *accepted* an offer of employment from J&K. The only discussion between J&K and GGE was the call between Mr. Hocky and Mr. Keenan on June 3, 2005, Mr. Howard's last day at GGE. That brief call related only to the screening procedures that J&K was proposing to implement. Mr. Keenan's confirming letter[2] (the only document sent to Reading Blue Mountain or its counsel regarding Mr. Howard's employment) only sought comments to the screening procedures. Significantly, the letter does not indicate in any way that Mr. Howard's employment offer was contingent, nor does it ask for Reading Blue Mountain's consent. *See* Exhibit A, Affidavit of Eric M. Hocky ("Hocky Affidavit").

Indeed, J&K's actions belie its claims the employment offer was contingent on getting any consent from Reading Blue Mountain. J&K waited to talk with Reading Blue Mountain's counsel until Friday afternoon of Mr. Howard's last day at GGE, and had Mr. Howard begin work at J&K the following Monday morning. The discussions between J&K and GGE took place, and Mr. Keenan's confirming letter was sent, at a time when Reading Blue Mountain's President was out of the office, and no consent was possible before Mr. Howard began work at J&K on June 6, 2005. *See* Hocky Affidavit, Michel Affidavit. Further, as noted above, the letter conspicuously does not ask for Reading Blue Mountain's consent.

Despite that it was quite impossible for J&K to obtain actual consent from Reading Blue

---

[1] As set forth by Mr. Michel in his affidavit, no one directly asked Reading Blue Mountain for its consent. From past dealings with Mr. Michel, Messrs. Keenan, Cohen and Howard all knew that it was unlikely that he would consent if asked.

[2] The letter dated June 3, 2005, is attached as Exhibit A to Reading Blue Mountain's Motion, and as Exhibit C to Norfolk Southern's Response.

Mountain in the time before Mr. Howard began work there,[3] Norfolk Southern implies that Reading Blue Mountain consented by allowing time to pass after Mr. Howard was already hired, before requesting that J&K withdraw from this case. However, comment [7] to Rule 1.0 provides:

> Obtaining informed consent will usually require an affirmative response by the client or other person. In general, a lawyer may not assume consent from a client's or other person's silence.

Since it cannot imply consent, Norfolk Southern argues that Reading Blue Mountain has waived its right to bring this disqualification motion by waiting too long to notify Norfolk Southern that it objected to J&K's continuing representation of Norfolk Southern in this proceeding. However, Norfolk Southern has not cited a single case where a court has dismissed a motion for disqualification based on the passage of time before the motion was brought.[4] Further, Norfolk Southern has not been prejudiced by the passage of time because, as it admits in its Response and the attached affidavits, nothing substantive requiring action by Norfolk Southern or J&K has happened in the case since J&K hired Mr. Howard.[5] (Since Reading Blue Mountain filed its Motion and Norfolk Southern filed its Response, the Court

---

[3] Norfolk Southern does not (and cannot claim) that Reading Blue Mountain or its counsel affirmatively consented to J&K's continued representation of Norfolk Southern in this matter.

[4] In *Dworkin*, the only case cited by Norfolk Southern, the objection to the continued representation of the plaintiff was not made in a "few days" after the lawyer switched firms as suggested by Norfolk Southern. Norfolk Southern Response at 6. Rather, the court's recitation of the background reveals that the objection was not raised by defendant until almost three weeks later. *Dworkin v. General Motors Corporation*, 906 F. Supp. 273, 276 (E.D.Pa. 1995). The court did not otherwise discuss the timing of the objection in the context of the decision.

[5] Mr. Howard's work on matters that do not involve Norfolk Southern and Reading Blue Mountain in accordance with the screening that has evidently been implemented by J&K is not affected by the motion to disqualify J&K in this action.

issued a Memorandum and Order dated September 7, 2005, denying Norfolk Southern's request for reconsideration.)

When Reading Blue Mountain first learned that Mr. Howard had gone to work for J&K, it requested that GGE and other outside counsel for the company research the issues raised by Mr. Howard accepting an offer at J&K, and advise it on its legal options. *See* Michel Affidavit, Hocky Affidavit. Reading Blue Mountain wanted to be sure of its options, and the law, before seeking disqualification. It is true that Reading Blue Mountain did not object to J&K's continued representation of Norfolk Southern in matters involving Reading Blue Mountain until July 7, 2005 (approximately one calendar month after Mr. Howard started work at J&K), when GGE wrote to Mr. Keenan asking that J&K voluntarily withdraw from this case. Since there were no immediate actions required by the parties in the case, Norfolk Southern was not prejudiced by the passage of the few weeks it required to do the research and raise the objection, and Reading Blue Mountain did not waive its right to bring this motion to disqualify Norfolk Southern's counsel.

Importantly, Norfolk Southern's Response largely ignores the requirements of Rule 1.7, and the ethical and policy implications of allowing a law firm to hire one of the principal attorneys representing an opponent in the midst of ongoing litigation. Instead, Norfolk Southern raises a red herring: the lack of recent activity in the case. However, the action is clearly ongoing - at the time of the employment discussions, the parties were waiting for a decision on Norfolk Southern's motion for reconsideration (since denied by the Court), and the parties knew that regardless of the result they would have to try the remaining claims of Norfolk Southern. Significantly, neither Mr. Cohen nor Mr. Howard disclose that Mr. Cohen's initial call to Mr. Howard was to discuss this very case, and the employment opportunity at J&K

was only raised in this context.  *See* Hocky Affidavit.  Indeed, there was no other reason for Mr. Cohen to have made the call.

Norfolk Southern does not explain how screening procedures imposed after employment negotiations have been held and an offer of employment has been accepted, can cure the problems created by negotiations between a lawyer and the firm representing his client's opponent.  The only case cited by Norfolk Southern in its Response, *Dworkin*, *supra*, dealt with a situation where the lawyer had resigned from his prior employer, and comprehensive screening was put in place, prior to any offer of employment having been made to the lawyer by the new firm.  *Dworkin*, 906 F. Supp. at 276.

Norfolk Southern also argues in its Response that screening requirements cannot differ depending on the size of the law firm involved. Norfolk Southern Response at 6-7.  That simply is not the case.  The Court must gauge the effectiveness of proposed screening procedures under the circumstances of the particular case, and the size of the law firm is a significant factor in this determination.  *Dworkin,* 906 F. Supp. at 279-280.  *See also* Reading Blue Mountain Memorandum in Support at 8-9.

Mr. Howard obviously has the right to change employers if he so desires, and neither Reading Blue Mountain nor GGE can force him to do otherwise.  However, it does not follow that the Court should condone his hiring by the very firm representing Reading Blue Mountain's opponent in the midst of this ongoing litigation.  The proper remedy is for the Court to allow Mr. Howard to continue working for J&K, but to disqualify J&K from continuing to represent Norfolk Southern in this action against Reading Blue Mountain.

For the reasons set forth above and in the Reading Blue Mountain Memorandum in Support, Janssen & Keenan, P.C. should be disqualified from continuing to represent Norfolk Southern in this action, and Reading Blue Mountain should be awarded its costs and attorneys' fees in connection with this Motion.

                                        Respectfully submitted,

                                        GOLLATZ, GRIFFIN & EWING, P.C.

Dated: September 8, 2005              By: _____
                                        Eric M. Hocky, Esquire
                                        PA Attorney I.D. No. 34560
                                        Amy Donohue-Babiak, Esquire
                                        PA Attorney I.D. No. 46892
                                        Four Penn Center, Suite 200
                                        1600 John F. Kennedy Blvd.
                                        Philadelphia, PA 19103
                                        (215) 563-9400

                                        Attorneys for Defendant
                                        Reading Blue Mountain & Northern
                                        Railroad Company