IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NORFOLK SOUTHERN RAILWAY COMPANY,** | : | No. 3:03cv736 |
| **Plaintiff** | : | (Judge Munley) |
| v. | : | |
| **READING BLUE MOUNTAIN & NORTHERN RAILROAD COMPANY,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Presently before the Court for disposition is Defendant Reading Blue Mountain & Northern Railroad Company's motion to disqualify Janssen & Keenan, P.C. as counsel for Plaintiff Norfolk Southern Railway Company in the present case. This matter has been fully briefed and is ripe for disposition. For the following reasons, we will grant the motion and disqualify Janssen & Keenan.

**I.   Background**

On May 1, 2003, Jansen & Keenan filed the Complaint on behalf of Norfolk against Reading in the instant action. On June 3, 2003, Charles Howard Esq. of Gollatz, Griffen, & Ewing, P.C. entered his appearance as defense counsel and filed a Motion to Dismiss the Complaint. Howard signed the Brief in Support, and subsequently signed a notice to the Court withdrawing the motion and submitting the case to arbitration. On August 11, 2003, Reading submitted the Answer with Howard's signature.

On April 23, 2004, Reading filed a Motion to for Partial Summary Judgment signed by Howard. Howard also signed Reading's Brief in Support and Reply Brief. At oral argument,

Howard represented Reading.  On December 2, 2004, this Court granted Reading's Motion for Partial Summary Judgment, and Norfolk responded by filing a Motion for Reconsideration.  Howard submitted Norfolk's Brief in Opposition.

On May 19, 2005, while this Court's resolution of Norfolk's Motion for Reconsideration was pending, Howard spoke on the phone with Norfolk's lead counsel, Jeffrey Cohen, and indicated that he was interested in obtaining a position with Janssen & Keenan.  (Pl. Ex. B. Howard Aff. ¶ 3.)  Cohen referred him to Paul Keenan.  (Id. at ¶ 4.)  On May 25, 2005, Howard received an offer for employment from Janssen & Keenan.  (Id. at ¶ 5.)  On May 26, 2005, Howard spoke with Eric Hocky, the lead partner at Gollatz, Griffen, & Ewing about his offer of employment, and Hocky explained that he would ask Reading if it had an objection to Howard's employment with Janssen & Keenan.  (Id. at ¶ 6.)

On June 3, 2005, Keenan called Hocky to discuss the screening measures he would implement at Janssen & Keenan.  (Def. Ex. A Hocky Aff. ¶ 6.)  Later that day, Keenan sent Hocky a letter outlining the screening procedures.  (Def. Ex. A, Hocky Aff. ¶ 8; Pl. Ex. D, June 3, 2005 Letter from Keenan to Hocky.)  These procedures were as follows:

- (i) Mr. Howard will, while employed by this firm, never represent any party in a matter adverse to RBMN;
- (ii) Mr. Howard will have no access to any files in any way related to pending litigation, or any other matter, which involves both Norfolk Southern and the RBMN [Reading];
- (iii) All personnel of this firm are under strict written instructions not to discuss or reference any matter involving RBMN with Mr. Howard;
- (iv) Mr. Howard will not work on any matters on behalf of Norfolk Southern which involve Norfolk Southern's relations with short line railroads.

(Pl. Ex. D, June 3, 2005 Letter from Keenan to Hocky.)

In addition, Keenan assured Hocky that he instructed Howard to immediately notify him if he inadvertently became involved in a matter adverse to Reading, and Keenan promised to relay this information to Hocky.  (Id.)

Wayne A. Michel, president of Reading was out of town between June 2 and June 6, 2005.  (Def. Ex. B. Michel Aff. ¶ 2.)  Had he been informed of Howard's potential employment with Janssen & Keenan, he would have objected.  (Id. at ¶ 6.)

By June 6, 2005, Howard had not received an objection from Hocky or Reading, and began work for Janssen & Keenan.  (Howard Aff. at ¶ 8.)  Since Howard began working at the Janssen & Keenan, the firm's files relating to this case have remained in a locked cabinet separate from all other files.  (Pl. Ex. C, Keenan Aff. ¶ 8.)  Keenan and the firm administrator possess the only two keys to this cabinet.  (Id.)  The firm also circulated written instructions to all personnel to refrain from discussing with Howard any matter involving Reading.  (Id.)  Cohen and Keenan are the only individuals in the firm who possess information about the file of this case.  (Id.)

**I.     Discussion**

This Court has adopted the Rules of Professional Conduct ("Rules") as adopted by the Pennsylvania Supreme Court.  UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA LOCAL RULE 83.23.2.  Rule 1.10(b) provides that conflicts of interests of an attorney transferring to a new law firm are imputed to the firm, unless the firm can adopt appropriate screening measures to ensure the preservation of client confidentiality.

> When a lawyer becomes associated with a firm, the firm may not

3

> knowingly represent a person in the same or substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rule 1.6 and 1.9(b) that is material to the matter unless:
> 
> (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
> 
> (2) written notice is promptly given to the appropriate client to enable it to ascertain compliance with the provision of this rule.

Rules of Professional Conduct 1.10(b) .

The firm whose disqualification is sought bears the burden to demonstrate compliance with Rule 1.10(b).[1]  Dworkin v. General Motors Corp., 906 F. Supp. 273, 279 (E.D. Pa. 1995). Norfolk argues that it has met its burden to establish compliance with Rule 1.10(b).  It argues that Howard promptly provided Reading with written notice of his proposed employment action and the ethics screen.  It argues that the relatively small size of Janssen & Keenan does not preclude an effective screen.[2]

Janssen & Keenan has not met its burden to establish compliance with Rule 1.10(b).  As an initial matter, nowhere in the affidavits opposing disqualification does it assert that Howard will receive no part of the fee from its representation in this case.  This failure alone warrants

---

[1] There is no dispute that Howard obtained confidential information as lead counsel for Reading in this case.  Therefore, Norfolk bears the burden.  James v. Teleflex, No.CIV.A. 97-1206, 1999 WL 98559, at *5 (E.D. Pa. Feb. 24, 1999) (citing Dworkin, 906 F. Supp. at 280).

[2] It also argues that the one month passage of time between Howard's employment with Janssen & Keenan and Reading's first objection to the continued representation somehow precludes disqualification. Norfolk has not adequately established this, nor cited to any precedent in support thereof.  Reading certainly never consented to Howard's employment, nor could its one month of silence possibly be construed as consent.  Howard never provided written notice to Reading.  Thus, the one month delay was not unreasonable under the circumstances.

disqualification. Furthermore, it has not established that the screen will be effective. The effectiveness of an ethics screen is determined by the following factors:

1. The substantiality of the relationship between the attorney and the former client
2. the time lapse between the matters in dispute
3. the size of the firm and the number of disqualified attorneys
4. the nature of the disqualified attorney's involvement
5. the timing of the wall.

Dworkin v. General Motors Corporation, 906 F. Supp. 273, 279 (E.D. Pa.1995) (quoting Maritans GP, Inc. v. Pepper, Hamilton & Scheetz, 602 A.2d 1277, 1289 (Pa. 1992) (Nix. J., dissenting)). In addition, the wall itself must satisfy the following criteria,

1. the prohibition of discussion of sensitive matters
2. restricted circulation of sensitive documents
3. restricted access to files
4. strong firm policy against breach, including sanctions, physical and/or geographical separation

Id.

A thorough review of these factors establishes that the screen is ineffective in the present circumstances. First, and foremost, there is no time lapse whatsoever between Howard's representation of Reading and his employment with Janssen & Keenan. Howard left his client after the Court granted partial summary judgment and before trial. Additionally, the substantiality of the relationship between Howard and Reading, the nature of Howard's involvement in the present case, and Janssen & Keenan's size all weigh in favor of disqualification. Howard was the lead counsel for Reading. He filed the answer, a partial motion for summary judgment, a brief in support, and a reply brief, a brief in opposition to a motion for reconsideration, and appeared at oral argument on behalf of Reading. Thus, he had a substantial relationship with Reading and a significant role in this case. Furthermore, Janssen

5

& Keenan have ten attorneys in one office, certainly qualifying as a small firm.

Some elements of the screen weigh against disqualification. First, it was implemented immediately upon Howard's transfer to Janssen & Keenan. Furthermore, the screen's prohibition of discussion of sensitive matters, restricted circulation of sensitive documents, and restricted access to files weigh against disqualification. The screen prevents members of the firm from discussing any matter involving Reading with Howard. It limits access to documents relating to this case to Keenan and Cohen. It also precludes Howard from accessing files related to this case or any other matter involving Norfolk and Reading.

The final quality for an effective screen, however, is not present. An effective screen should have a "strong firm policy against breach, including sanctions, physical and/or geographical separation." Dworkin, 906 F. Supp. at 279. In Dworkin, the court found a screen effective because it provided, "There is an absolute prohibition of any conversations with, around, near, or in the presence of the screened attorney concerning or relating to the screened files, and/or matters. Any employee who violates this policy will be terminated and will be subject to disciplinary proceedings." Id. at 280. Janssen & Keenan's screen included no such strong policy. The screen provides, "All personnel of this law firm are under strict written instruction not to discuss or reference any matter involving [Reading] with Mr. Howard." (Pl. Ex. D, Keenan Letter to Hocky, June 6, 2005). This screen does not include the prospect of termination or disciplinary proceedings for violators. This is significant because it is imperative that all Janssen & Keenan employees understand the importance of compliance and that Reading be assured that non-compliance will be severely punished. Additionally, unlike

6

the screen in Dworkin, Janssen & Keenan's screen fails to expressly prohibit discussing sensitive matters around, near, or in the presence of Howard, and merely prohibits discussing them with Howard. This is no small distinction, as Janssen & Keenan has only ten attorneys in a single office, and the close working environment presents the distinct possibility that Howard could be nearby and overhear a sensitive discussion.

In James v. Teleflex Inc., No.CIV.A.97-12306, 1999 WL 98559, at * 1 (E.D. Pa. Feb. 24, 1999) attorney Edward Dunham was the lead counsel for Teleflex, and in the midst of the litigation, his firm merged with Duane Morris, the firm representing the Plaintiff James. Id. at *1. Dunham then withdrew as counsel for the defense, and Duane Morris continued to represent the plaintiff. Id. Teleflex moved to disqualify Duane Morris, arguing that Dunham's conflict of interested was imputed to the entire firm and his employment there warranted disqualification. Id. at *1-2. The court found that Duane Morris implemented a facially sufficient screen, but held that other factors weighed in favor of disqualification. Id. at *6. It noted that the lack of a time lapse between the representations, the nature of the disqualified attorney's involvement in the case, and his substantial relationship with Teleflex all weighed in favor of disqualification. Id. It concluded, "the Court's interest in protecting the integrity of the proceedings and maintaining public confidence, as well as Teleflex's interest in attorney loyalty, would best be served by disqualification in this case." Id. at 7. These interests outweighed the plaintiff's risk of prejudice because the disqualification had no effect on the summary judgment motion, the trial date had not yet been set, and the court allowed the plaintiff sufficient time to retain counsel.

Similarly, we find that the competing concerns behind Rule 1.10(b) warrant disqualification under the present circumstances. See U.S. v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980) (holding that courts should consider "the ends that the disciplinary rule is designed to serve an any countervailing policies" in determining whether disqualification is an appropriate means of enforcing an ethics rule).

> There are several competing considerations. First, the client previously represented must be reasonably assured that the principle of loyalty is not compromised. Second, the rule of disqualification should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel. Third, the rule of disqualification should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association.

Rule 1.10(b) cmt.

Reading's interest in attorney loyalty weighs heavily in favor of disqualification, because the present situation severely undermines the integrity of the attorney-client relationship. If a client believes his attorney is free to abandon him in for employment with opposing counsel without fear of disqualification of opposing counsel, the client would have no reason to be assured that his attorney would be loyal, and the candor between the client and attorney would be severely compromised. In such a situation, clients would be wise to provide as little information as possible to their attorneys for fear that the next day they would work for the opposition. Furthermore, Janssen & Keenan's screen provides no internal punishment for those who violate the screen, further undermining Reading's confidence in Howard's loyalty.

Under the second consideration, disqualification would not preclude other persons

from having a reasonable choice of legal counsel.  The circumstances here are unique and hopefully rare.  In the middle of a pending litigation, the law firm representing the plaintiff hired the defendant's lead counsel.  Disqualification would affect only this litigation and the parties presently involved.  While Norfolk may not employ Janssen & Keenan, we do not feel that Norfolk will be deprived of a reasonable choice of counsel because they are free to obtain any other counsel.  Norfolk's interests in this litigation will not be prejudiced because summary judgment had already been decided when the disqualifying event occurred and the disqualifying event had no impact on this Court's resolution of the motion for reconsideration.  The trial date is not yet set, and we will allow Norfolk sufficient time to obtain replacement counsel and for replacement counsel to prepare for trial.

Finally, disqualification under these circumstances would not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association.  Rather, it would prevent lawyers from switching sides in the same litigation.  Under our holding, Howard's limitations are narrowly circumscribed to the present circumstances, and he would be free to work for any other firm, and even free to work for Janssen & Keenan.  However, he is not free to work for Janssen & Keenan while Janssen & Keenan continue to represent Norfolk in the same case where he previously was the lead opposing counsel.

In conclusion, in the facts presently before the Court, the interests in client loyalty and the integrity of court proceedings outweigh Norfolk's interests in counsel of its choice and

Howard's interests in mobility within the legal profession.³  Therefore, we will disqualify Janssen & Keenan from representing Norfolk in the instant case.  An appropriate order follows.

---

³ We will deny Reading's motion for costs and attorney's fees associated with this motion. Reading has cited no authority in support of this request at this stage of the litigation. Reading may not recover costs and fees under Federal Rule of Civil Procedure 54(d) at present because this Court has yet to enter judgment in this case, and Reading is not the prevailing party because this case is still pending.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NORFOLK SOUTHERN RAILWAY COMPANY,** | : | No. 3:03cv736 |
| | : | |
| **Plaintiff** | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| **READING BLUE MOUNTAIN & NORTHERN RAILROAD COMPANY,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

    **AND NOW**, to wit, this 25th day of October 2005, Defendant's Motion to Disqualify Plaintiff's Counsel (Doc. 44) is hereby **GRANTED**. Defendant's motion for fees and costs associated with this motion is **DENIED**. It is hereby **ORDERED** that this case is stayed until November 28, 2005 to allow Plaintiff to obtain replacement counsel and for replacement counsel to enter its appearance on the docket. If necessary, the stay may be extended upon a written request by Plaintiff and for good cause shown. Present counsel for Plaintiff may remain counsel of record in this lawsuit until such time as replacement counsel is obtained solely for the purpose of assisting Plaintiff in obtaining replacement counsel and assisting in the transfer of the case, so long as Janssen & Keenan continues all present screening procedures, and additionally includes: 1) a provision in the screen that no staff member is to discuss any matter involving Reading within the presence of or near Charles Howard; and 2) a provision for appropriate sanctions for individuals violating the screen. Janssen & Keenan shall withdraw immediately when replacement counsel enters its appearance.

                                             **BY THE COURT:**

                                             **s/ James M. Munley**
                                             **JUDGE JAMES M. MUNLEY**
                                             **United States District Court**